UNITED STATES of America, Plaintiff,

v.

TELINK, INC., et al., Defendants.

Crim. No. 84–0958–G.

United States District Court,
S.D. California.

March 24, 1988.

Jon Lantz Lewis, San Diego, Cal., for plaintiff.

George Boisseau, Chula Vista, Cal., Ramon Castro, Mario Conte, Frank Gregorcich, Steven Hurst, John Mitchell, San Diego, Cal., Andrew Stein, and Frank Vecchione, San Diego, Cal., for defendants.

## MEMORANDUM DECISION

GILLIAM, District Judge.

The government's motion to declare admissible evidence at retrial came on for hearing March 18, 1988, before the Honorable Earl B. Gilliam. The government was represented by Lantz Lewis; defendants were represented by George Boisseau, Ramon Castro, Mario Conte, Frank Gregorcich, Steven Hurst, John Mitchell, Andrew Stein, and Frank Vecchione. At the hearing, the parties' arguments focused on whether the government had alleged that defendants had defrauded it of a "property" right within the meaning of the federal mail fraud statute, 18 U.S.C. § 1341 (1982). At the conclusion of the hearing, the court reserved its ruling and informed the parties that it would issue a written opinion. Having considered the points and authorities and oral argument of counsel, the court issues this memorandum decision.

## FACTS

Defendants, numerous individuals and two corporations, have been indicted in a forty-six count indictment. The crimes defendants are charged with include mail fraud and wire fraud. For purposes of this motion, the indictment in pertinent part charged that defendants committed the following acts:

> knowingly and wilfully [sic] devised and itended to devise a scheme and artifice to defraud and obtain money and property and deprive governmental entities of the honest and faithful service of employees, agents and consultants by means of false and fraudulent representations in connection with the sales of telecommunications equipment. . . .

Indictment at 70.

This case proceeded to trial in the spring of 1986. On June 24, 1987, however, the United States Supreme Court published its decision in *McNally v. United States*, —— U.S. ——, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), which held that section 1341[1] is limited in scope to the protection of property rights and that section 1341 does not recognize as a property right the right to have the government's affairs conducted honestly. *Id.* at 2879–81.

As mentioned above, one of the government's theories in this case, which was

---

1. For purposes of this memorandum decision, the terms "section 1341" and "the mail fraud statute" are used interchangeably and refer to 18 U.S.C. § 1341.

being tried when the *McNally* decision was published, was that defendants had deprived the government of the honest and faithful service of its employees, agents, and consultants by means of false and fraudulent representations. *See* Indictment at 70. Consequently, much of the evidence that had been received at the trial was relevant to that theory. Yet in *McNally*, the Supreme Court held that such a property right was not encompassed within the protection of the mail fraud statute. The jury had heard months of testimony concerning events that were relevant to the government's vitiated theory of the case, and this court thus declared a mistrial.

The instant motion was heard at the court's request. The sole issue before the court was whether the government had alleged a "property" right within the meaning of section 1341 in contending that defendants defrauded it of its right to control the way its money is spent and its right to expect defendants to proceed in good faith on the contract.

## DISCUSSION

18 U.S.C. § 1341 provides in relevant part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, ... places in any post office or authorized depository for Postal Service, or takes or receives therefrom, any such matter or thing whatever to be sent or delivered by the Postal Service ... shall be fined not more than $1,000 or imprisoned not more than five years or both.

The history of this statute is well-documented. The statute, as first enacted in 1872, prohibited the use of mails in furtherance of "any scheme or artifice to defraud." *McNally*, 107 S.Ct. at 2879. In 1896, the Supreme Court interpreted the mail fraud statute and held that the phrase "any scheme or artifice to defraud" was to be interpreted broadly insofar as property rights were concerned. *Id.* at 2879–80.

In 1909, Congress amended the mail fraud statute to add the words "or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises" after the phrase "any scheme or artifice to defraud". *Id.* Thus, the statute was amended to its current form.

After Congress amended the mail fraud statute in 1909, the courts of appeals held that the statute applied to two types of schemes to defraud. First, the statute applied to schemes to defraud individuals of money or other tangible property interests. Second, and most important for purposes of this case, the statute applied to schemes to defraud citizens of intangible rights—for example, the right to the faithful and unbiased services of the government. *See, e.g., United States v. Price,* 788 F.2d 234, 236–37 (4th Cir.1986), *vacated,* — U.S. —, 107 S.Ct. 3254, 97 L.Ed.2d 754 (1987).

In *McNally*, however, the Supreme Court appeared to eliminate the second type of case to which the mail fraud statute applied. There, the Court held that the mail fraud statute is limited to the protection of "property" rights. 107 S.Ct. at 2881. The Court found that the citizens' right to have the affairs of their government conducted honestly was not a "property right" within the meaning of the mail fraud statute. And the Court noted that the jury had not been "required to find that the [government] itself was defrauded of any money or property." *Id.* 107 S.Ct. at 2882. Consequently, the Court reversed the court of appeals and remanded the case.

Following the Supreme Court's opinion in *McNally*, it appeared that the mail fraud statute did not encompass schemes to defraud of intangible property rights. *See United States v. Runnels,* 833 F.2d 1183, 1186 (6th Cir.1987). The following Term, however, the Supreme Court again interpreted the mail fraud statute. In *Carpenter v. United States,* — U.S. —, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987), the Court held that the right to confidential business information was a "property" right within the protection of section 1341. The Court wrote: "[The] intangible nature [of confi-

dential business information] does not make it any less 'property' protected by the mail and wire fraud statutes. *McNally* did not limit the scope of § 1341 to tangible as distinguished from intangible property rights." *Id.* 108 S.Ct. at 320. The Court distinguished its decision in *McNally* by writing that the loss of the "honest and faithful service" of government is "an interest too ethereal in itself to fall within the protection of the mail fraud statute." *Id.*

Hence, after the Supreme Court's decisions in *McNally* and *Carpenter*, two things are clear: (1) the right to honest and faithful government service is not a "property" right that falls within the protection of section 1341, and (2) the intangible nature of confidential business information does not prevent it from being a "property" right within the meaning of section 1341. Thus, there is a tremendous gray area concerning the scope of the mail fraud statute.

In this case, the government contends that defendants deprived it of two "property" rights within the meaning of section 1341. The court will analyze these contentions in turn.

### A. Loss of Control over How One's Money is Spent

The government claims that defendants defrauded it of a "property" right by depriving it of its ability to control how its money is spent. The defendants, on the other hand, argue that any such loss of control is simply a creative way of asserting the loss of the right to honest and faithful government service and therefore that any such loss of control is not a "property" right under section 1341.

It should be noted that in *McNally* the Supreme Court did not decide whether the loss of control over how one's money is spent is a "property" right under section 1341. The Court, in fact, stated: "Nor was

the jury charged that to convict it must find that the [government] was deprived of control over how its money was spent." *McNally*, 107 S.Ct. at 2882. It should also be noted that it is a well-established federal policy to liberally construe the definition of "property rights" that are covered under the mail fraud statute. *See Durland v. United States*, 161 U.S. 306, 16 S.Ct. 508, 40 L.Ed. 709 (1896).

This court finds that the right to control the way one's money is spent is more akin to confidential business information than it is to the right to honest and faithful government service. As the Supreme Court noted, the so-called "right to honest and faithful government service" is ethereal; it is vague and impossible to quantify. The right to control the way one's money is spent, however, is not ethereal; in fact, it involves the manner in which one's tangible property is disposed. One's ownership of money means naught unless one has the concomitant right to control that money. Thus, in holding that the right to control how one's money is spent is a "property" right under section 1341, this court is following the teachings of both *McNally* and *Carpenter*.

### B. Loss of the Right to Expect Contracting Parties to Proceed in Good Faith

The government also contends that defendants defrauded it of a "property" right under section 1341 by depriving it of its right to expect defendants to proceed in good faith on the contract. In particular, the government asserts that defendants failed to negotiate in good faith and therefore deprived the government of its right to the benefit of the bargain.

In California,[2] every contract contains an implied convenant of good faith and fair dealing. *See Seaman's Direct Buying Srvc., Inc. v. Standard Oil Co.* 36 Cal.3d

2. This court notes that property rights are commonly created under state law. In fact, the Supreme Court has written: "Property interests, of course, are not created by the Constitution. Rather, they are created by existing rules or understandings that stem from an independent source such as state law...." *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Thus, a property right that exists in California may not exist in other states.

752, 768, 206 Cal.Rptr. 354, 686 P.2d 1158 (1984). A violation of this covenant gives rise to causes of action under both tort and contract law. Thus, parties entering a contract have the right to expect their counterparts to proceed in good faith.

According to the government's theory of the instant case, defendants deprived it of this right. As this theory goes, defendants did not proceed in good faith but relied instead on manipulation. They provided various types of secret payments to governmental agents and employees to ensure that these agents and employees had the government award the contract to defendants.

Thus, the question arises whether this right is a "property" right within the meaning of the mail fraud statute. Like the right to control how one's property is disposed, the right to expect contracting parties to proceed in good faith falls within the gray area created by the *McNally* and *Carpenter* decisions. Though it falls within the gray area, the court finds that the right to expect contracting parties to negotiate in good faith is akin to confidential business information and is therefore "property" that is protected by the mail fraud statute.

Unlike the right to honest and faithful government service, the right to expect contracting parties to proceed in good faith is not "ethereal." In fact, violations of this right result in civil liability under both contract law and tort law. And though the nature of this right is "intangible," that does not make it any less "property" within the meaning of section 1341. *See Carpenter*, 108 S.Ct. 316, 320 (1987).

In sum, this court finds that the right to control the way one's money is spent and the right to expect contracting parties to proceed in good faith are "property" rights within the meaning of the mail fraud statute. The right to control the way one's money is spent is not "ethereal;" in fact, it involves the disposition of tangible items of property. Similarly, the right to expect contracting parties to proceed in good faith is not "ethereal;" a violation of this right

results in civil liability. Consequently, the government's motion to declare admissible evidence at retrial may proceed.

IT IS SO ORDERED.